John D. Fassett, of Wiggin & Dana, New Haven, Conn., for plaintiff.

**UNITED AIRCRAFT CORPORATION,**
Plaintiff

v.

**DAVID H. MACKENZIE, INC.,**
Defendant.

Civ. No. 4578.

United States District Court
D. Connecticut.

July 8, 1961.

Philip R. Shiff and Alan H. W. Shiff, New Haven, Conn., for defendant.

TIMBERS, District Judge.

Plaintiff, United Aircraft Corporation, brought this action to recover indemnification under a contract with defendant, David H. Mackenzie, Inc., for all amounts plaintiff has expended in defending and satisfying judgment in a death action brought against it by the administrator of the estate of one of defendant's employees who was killed at plaintiff's plant while working there for defendant.

The case was tried to the Court without a jury.

The Court makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact

(1) Defendant is a corporation organized and existing under the laws of Connecticut. Plaintiff is a corporation or-

ganized and existing under the laws of Delaware.

(2) The amount in controversy, exclusive of interest and costs, exceeds $3,000.

(3) Defendant is a painting contractor and has performed painting work for plaintiff since 1939. The work was done at plaintiff's Sikorsky Aircraft Division Plant in Bridgeport, Connecticut and was performed pursuant to purchase orders issued by plaintiff to defendant.

(4) On January 2, 1952 defendant submitted to plaintiff a certificate of the insurance coverage carried by it.

(5) On February 19, 1952 in connection with some painting work to be done for plaintiff pursuant to a purchase order, defendant submitted certain charges to plaintiff. Among the charges was one for "insurance coverage" furnished by defendant consisting of "Workmen's Compensation Insurance, Comprehensive Property Damage Insurance with limits of $100,000 each accident, $100,000 Aggregate Operations, $100,000 Aggregate Protective and $100,000 Aggregate Contractual, and Comprehensive Public Liability (Bodily Injuries) with limits of $100,000 each person and $300,000 each accident." This coverage was identical with the coverage set forth in the certificate of insurance sent by defendant to plaintiff on January 2, 1952.

(6) On July 23, 1952 defendant and plaintiff entered into an agreement patterned after the previously used purchase orders.

(7) Article 6 of this agreement provides in relevant part as follows:

"The Contractor shall secure and protect itself, and shall secure and protect United from any liability, loss or damage whatsoever for any injury, including death, to any person or property whatsoever in the performance of work under this Agreement or Purchase Orders issued pursuant hereto * * *."

(8) The reason for such agreement was to provide a continuing agreement between plaintiff and defendant, since defendant regularly performed various types of maintenance work for plaintiff.

(9) On October 28, 1952 Vito Daniello, while employed by defendant in the performance of work being done pursuant to a purchase order issued by plaintiff on March 31, 1952, and pursuant to the agreement of July 23, 1952, sustained injuries which on November 1, 1952 resulted in his death.

(10) In February 1953 a wrongful death action was instituted in the Superior Court, New Haven County, by Daniello's administrator against plaintiff.

(11) Defendant filed an intervening complaint against plaintiff in said suit to recover the amount of workmen's compensation which it had paid by reason of Daniello's death and injury. No answer or counterclaim was asserted by plaintiff against defendant.

(12) At the time of the accident which resulted in the death of Daniello, plaintiff had comprehensive liability coverage with Liberty Mutual Insurance Co., with limits of $5,000,000. By virtue of this coverage, Liberty Mutual Insurance Co. was obligated to pay any judgment rendered against plaintiff which resulted from negligence of plaintiff.

(13) Pursuant to this insurance contract, plaintiff within a few days after the accident to Daniello sent a formal notice of the accident to Liberty Mutual Insurance Co.

(14) On May 6, 1953, a meeting was held between officials of United and the president of Mackenzie in order to ascertain whether defendant had in force insurance which would protect plaintiff against any claim asserted against it by Daniello. No such insurance was discovered.

(15) After a determination that defendant's insurance did not provide protection to plaintiff, the latter by letter dated June 5, 1953 directed Liberty to undertake legal proceedings to compel defendant to take over the defense of the Superior Court action and to indemnify plaintiff against any judgment therein.

(16) By letter dated July 2, 1953, Liberty Mutual through its attorney formally requested defendant to take over the defense of the Superior Court action. Defendant did not take over the defense of the Daniello suit and the defense of the Daniello suit remained in the hands of Liberty as liability insurer of United.

(17) The trial of the Daniello suit was resolved by a stipulation for judgment. On October 29, 1953 a judgment was entered by stipulation against plaintiff in the amount of $25,000.

(18) On December 2, 1953 Liberty delivered to plaintiff a check for $25,000 in exchange for a "loan receipt" which recited that the sum of $25,000 was loaned to United by Liberty.

(19) On December 4, 1953 United paid the administrator of Daniello's estate $25,000 and a satisfaction of judgment was filed in the Superior Court.

(20) The present suit, commenced August 26, 1953, seeks pursuant to Article 6 of the agreement of July 23, 1952, indemnification by defendant of plaintiff for the amount expended by plaintiff as a result of the Daniello suit.

(21) Defendant did not intend, when it entered into the agreement of July 23, 1952, to indemnify plaintiff for plaintiff's own negligence. Defendant did not intend under Article 6 of the agreement to insure plaintiff against liability for injuries caused by plaintiff's own negligence.

(22) Nothing in defendant's conduct prior to or subsequent to the execution of the agreement of July 23, 1952 evinced an intention on defendant's part to indemnify plaintiff for plaintiff's negligence.

(23) Nothing in plaintiff's conduct prior to entering into the agreement or subsequent to Daniello's accident indicated that plaintiff believed that defendant had agreed to indemnify plaintiff for plaintiff's own negligence. If anything, plaintiff demonstrated that it had no such belief.

(24) Defendant's charges, including the cost of insurance, have not been proven to be in excess of those generally charged by painting contractors for similar services.

## Conclusions of Law

(1) This Court has jurisdiction over the parties to and the subject matter of this suit.

(2) An intention to indemnify one against his own negligence must be expressed in clear and unequivocal language.

(3) The language employed in the first sentence of Article 6 of the agreement of July 23, 1952 is not so clear and unequivocal that it can be construed to provide for indemnification to plaintiff against losses resulting from plaintiff's own negligence.

(4) The words "any liability, loss or damage whatsoever" in the first sentence of Article 6 of the agreement of July 23, 1952 relate only to indemnification of plaintiff for acts arising out of defendant's performance.

(5) Defendant did not breach the agreement of July 23, 1952 when it refused to take over the defense of the Daniello suit in the Superior Court.

(6) Defendant did not breach the agreement of July 23, 1952 when it refused to reimburse plaintiff for the amount expended by plaintiff in satisfying the Daniello judgment.

(7) Defendant is entitled to judgment dismissing the complaint, together with its costs.